1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8
9
10

| | |
|---|---|
| DIANNE LEVINGSTON,<br><br>                    Plaintiff,<br><br>        vs.<br><br>DEBORAH K. JOHNSON, et al.,<br><br>                    Defendants. | )   1:14cv00287 DLB PC<br>)<br>)<br>)   ORDER DISMISSING COMPLAINT<br>)   WITH LEAVE TO AMEND<br>)<br>)   THIRTY-DAY DEADLINE<br>)<br>)<br>)<br>) |

11
12
13
14
15
16
17

Plaintiff Dianne Levingston ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action.  Plaintiff filed this action on October 3, 2013, in the United States District Court for the Northern District of California, and it was transferred to this Court on February 24, 2014.  Plaintiff names Central California Women's Facility ("CCWF") Warden Deborah K. Johnson in the caption of the complaint, though she also names Dr. Gonzales, Dr. Largoza, Dr. Mitchell and Dr. Lwin in the factual allegations.[1]

18
19
20
21
22
23

## A.    LEGAL STANDARD

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

24
25
26
27
28

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on April 15, 2014.

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.** __SUMMARY OF PLAINTIFF'S ALLEGATIONS__

In the Statement of Claim portion of the complaint form, Plaintiff states that she received a delayed diagnosis of cancer. She alleges that the process began on January 31, 2011, when her mammogram came back abnormal. Plaintiff alleges that she did not receive treatment until September 2012. Plaintiff is currently incarcerated at CCWF in Chowchilla, California.

Plaintiff directs the Court to Exhibit A, which is a letter written "To Whom it May Concern," for additional factual allegations.[2] The following summary is the Court's best attempt at setting forth her claims.

According to Plaintiff's letter, she was informed of an abnormal mammogram on January 31, 2011. At the time, she was a patient of Dr. Gonzales and asked about the abnormalities at each appointment. Dr. Gonzales told Plaintiff each time that he was going to send for the x-rays so that he could see what the examiners saw. Plaintiff alleges that this went on for three months. Plaintiff told Dr. Gonzales that she was concerned because her mother, father and aunt died from cancer. Dr. Gonzales finally did a breast examination and said that he did not feel anything and that Plaintiff should be fine. Plaintiff explained that the reason for a mammogram was early detection, to catch what you cannot see or feel. Dr. Gonzales told Plaintiff that she was going to be okay because he could not feel anything.

A week later, Plaintiff became Dr. Largoza's patient and she expressed her same concerns. Dr. Largoza wrote a request for Plaintiff to have another ultrasound on April 15, 2011, since Plaintiff had an ultrasound on April 4, 2011, that "claimed" the findings were benign. Plaintiff asked to see the x-ray, but was not given the paperwork. Dr. Largoza told Plaintiff that there was nothing he could do, and that maybe she was "confused about having the ultrasound on

---

[2] The letter is comprised of four pages, each labeled in order from one to four. However, the content does not logically flow from the end of one page to the beginning of the other. While the pages are in chronological order by date of the events described, it appears that some writing may be missing either at the bottom or top of each page.

April 4, 2011, because [she] was so concerned with the history of [her] family's death from cancer." ECF No. 1, at 7.

Plaintiff filed an appeal on May 19, 2011, regarding the abnormal mammogram.

She alleges that he had her first ultrasound on August 19, 2011, and it was "alleged normal." ECF No. 1, at 7.  Plaintiff states that she did not believe this.[3]

Plaintiff's letter then skips to a request by an oncologist that the prison perform a PET scan in September 2012.  When Plaintiff saw Dr. Largoza, he did not have any answers to Plaintiff's questions and asked her what the oncologist had said.  He told Plaintiff that he could not give her a copy of the pathology report.

Plaintiff met with a surgeon who was supposed to remove her lymph nodes and perform a partial mastectomy on October 17, 2012.  The oncologist said that due to the size of the tumor, she was probably Statge III or IV, though a PET scan needed to be done to determine the diagnoses.  Plaintiff alleges that her questions were still unanswered.  Plaintiff states that she did some research and found that cancer takes time to grow into a 5 cm golf ball.  Plaintiff alleges that the abnormal January 31, 2011, ultrasound, the August 19, 2011, allegedly normal ultrasound and the tumor found in August 2012 prove that the August 19, 2011, ultrasound could not have been normal.  However, Plaintiff was told that the ten lymph nodes that were removed were not cancerous.

While still waiting on the PET scan, the oncologist wanted to move on to treatment involving radiation.[4]  Plaintiff's letter then describes treatment options.  On November 20, 2012, an OR doctor prescribed burn cream to help with radiation treatment, though it took two weeks

---

[3]  At the end of the page, Plaintiff states that she did not believe this "due to the fact of the previous ultrasound on April. . ."  However, the beginning of the next page does not begin with a continuation of this sentence.  ECF No. 1, at 7-8.

[4]  The sentence at the end of the page states, "However, when he examined. . ." but the sentence does not continue on the next page.  ECF No. 1, at 8-9.

for Plaintiff to receive it.  Plaintiff had to personally inform Dr. Mitchell, CMO, to get the burn cream.

On December 11, 2012, the oncologist prescribed Neosporin, but by December 16, 2012, Plaintiff still did not have the Neosporin.  The doctor also ordered an ultrasound on December 11, 2012, to see if an abscess had formed inside the breast.  The doctor asked if the location that lit up on the PET scan had been treated yet, and Plaintiff said it had not.

Plaintiff alleges that Dr. Largoza is supposed to see her every five days, but it took him eight days to see her on December 3, 2012.  Plaintiff saw Dr. Largoza on December 23, 2012, but only because she walked into his office without an appointment.  He did not know what was going on with Plaintiff.  Plaintiff told him that the oncologist was concerned that a biopsy had not been done on another area.  Rather than setting up a biopsy, Dr. Largoza said that he would find out about it and set it up.  However, the oncologist ordered it two weeks prior "stat."  Plaintiff alleges that Dr. Largoza did not check the incoming doctor reports daily.  ECF No. 1, at 9.

Plaintiff's letter states that Dr. Mitchell denied a further test, perhaps the biopsy, but the sentence is not complete.  ECF No. 1, at 9-10.  Plaintiff contends that a CT scan showed that there was still something wrong with the left breast wall.

When Plaintiff went to meet with the oncologist, she was seen by a doctor that she had never met and who was not familiar with her situation.  Plaintiff told her about the concerns with the CT scan and she left the room to talk to the other oncologists.  The doctor returned and told Plaintiff that the issue was already taken care of.  The doctor also explained that the CT scan cannot distinguish scar tissue, though Plaintiff was concerned that the radiation tech should have been able to distinguish the difference and the tech didn't say anything about scar tissue.

Since Dr. Lwin has been Plaintiff's doctor, she has changed, altered and stopped Plaintiff's medication.  Plaintiff has been trying to get sunscreen for over a year, and Dr. Lwin has stopped her skin cream and migraine medication.

According to the information contained in Plaintiff's exhibits, she underwent an ultrasound on August 19, 2011.  In August 2012, she felt a lump in her left breast.  On September 28, 2012, Plaintiff underwent a needle biopsy.  Dr. Largoza gave Plaintiff her breast cancer diagnosis on October 4, 2012.  She underwent surgery on October 17, 2012, and November 8, 2012, and received a PET scan on November 16, 2012.  She has received follow up care and treatment through at least July 9, 2013.

In her appeals, Plaintiff complains of not getting sufficient care and not knowing the extent of her cancer.  She states that her treatment appears palliative, but she wants definitive, aggressive treatment to cure her cancer.

## C.   DISCUSSION

### 1.   Identification of Defendants

In the caption of the form complaint, Plaintiff names Warden Johnson as a Defendant.  In her letter setting forth her factual allegations, she also names Drs. Gonzales, Largoza, Mitchell and Lwin.  For purposes of this screening order, the Court will assume that these are the only five Defendants.

### 2.   Defendant Johnson

Plaintiff names Defendant Johnson in the caption of the complaint, but does not include any specific factual allegations against her.

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability.  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Moss v. U.S. Secret Service, 711 F.3d 941,

967-68 (9th Cir. 2013); <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 915-16 (9th Cir. 2012) (en

banc).  "A supervisor may be liable only if (1) he or she is personally involved in the

constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

wrongful conduct and the constitutional violation."  <u>Crowley</u>, 734 F.3d at 977 (citing <u>Snow</u>, 681

F.3d at 989) (internal quotation marks omitted); accord <u>Lemire</u>, 726 F.3d at 1074-75; <u>Lacey</u>, 693

F.3d at 915-16.  "Under the latter theory, supervisory liability exists even without overt personal

participation in the offensive act if supervisory officials implement a policy so deficient that the

policy itself is a repudiation of constitutional rights and is the moving force of a constitutional

violation."  <u>Crowley</u>, 734 F.3d at 977 (citing <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir.

1989)) (internal quotation marks omitted).

       Plaintiff fails to state a claim against Defendant Johnson.  She does not allege that

Defendant Johnson was personally involved in any of the events at issue, and she does not allege

that Defendant Johnson knew of any alleged violations and failed to prevent them.

       3.    <u>Eighth Amendment- Deliberate Indifference</u>

       While the Eighth Amendment of the United States Constitution entitles Plaintiff to

medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

indifference to an inmate's serious medical needs.  <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th

Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th

Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d

1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating

that failure to treat [her] condition could result in further significant injury or the unnecessary

and wanton infliction of pain," and (2) that "the defendant's response to the need was

deliberately indifferent."  <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d 1091, 1096 (9th Cir.

2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a

prisoner's pain or possible medical need, and (b) harm caused by the indifference."  <u>Wilhelm</u>,

680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

    "Deliberate indifference is a high legal standard."  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  <u>Id</u>. at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  <u>Id</u>. (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).

    From Plaintiff's allegations, it appears that she is alleging that she received a delayed diagnosis and deficient care for treatment of breast cancer.  Without a doubt, breast cancer is a serious medical need.  However, Plaintiff has failed to demonstrate that any Defendant acted with deliberate indifference.

    While a delay in treatment and/or deficient care may be a basis for an Eighth Amendment claim, Plaintiff's factual allegations do not explain why she believes that each Defendant was deliberately indifferent.  Deliberate indifference requires that Plaintiff sufficiently allege that any of the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety."  <u>Farmer</u>, 511 U.S. at 837.

    Here, while Plaintiff may have been seeking additional and/or faster treatment, she does not include facts to show that any Defendant knew of **and disregarded** an excessive risk to her health or safety.  For example, while she complaints of poor treatment, she does not allege that any treatment decisions were made with deliberate indifference to her health or safety.  Similarly, although Plaintiff alleges that she was denied a test, or that her medications were changed or stopped, she does not allege that any of these decisions were made in knowing

disregard to an excessive risk to her health or safety.  Neither malpractice, nor gross negligence, rise to the level of deliberate indifference.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285 (1977); <u>Snow</u>, 681 F.3d at 987-88; <u>Wilhelm</u>, 680 F.3d at 1122; <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, to the extent that Plaintiff disagreed with her doctors' treatment decisions, "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  <u>Snow v. McDaniel</u>, 681 F.3d 978, 987 (9th Cir. 2012) (citing <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  <u>Snow</u>, 681 F.3d at 988 (citing <u>Jackson</u>, 90 F.3d at 332) (internal quotation marks omitted).

For these reasons, Plaintiff fails to state an Eighth Amendment claim against any Defendant.  Plaintiff may ultimately be able to state a claim for deliberate indifference to a serious medical need, and the Court will therefore permit an opportunity to amend.

**D.**   **<u>CONCLUSION AND ORDER</u>**

Plaintiff's complaint fails to state any claim against any Defendants.

Plaintiff will be permitted one opportunity to amend her complaint, but she should only amend if she can do so in good faith.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  <u>George</u>, 507 F.3d at 607 (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-77.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).  Plaintiff should file her amended complaint on the complaint form provided.

Finally, an amended complaint supersedes the prior complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1.  Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

2.  The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.  Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;

4.  If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **July 31, 2014**                    /s/ Dennis L. Beck
                                        UNITED STATES MAGISTRATE JUDGE